In re Thomas D. SHERIDAN, Debtor.

Bankruptcy No. 83–145.

United States Bankruptcy Court,
D. Vermont.

Dec. 30, 1983.

W. Edson McKee, Montpelier, Vt., for debtor.

Richard L. Brock, Montpelier, Vt., for Vermont Nat. Bank.

Douglas J. Wolinsky, Burlington, Vt., Chapter 7 trustee.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code (Code) on July 19, 1983. On his statement of financial affairs, the debtor listed as assets the balance $1,606, of a checking account; a half-interest, worth $10,500, in a $35,000 house; and shares, worth a total of $155, in the Vermont State Employees Credit Union. As exempt property, the debtor listed his participation interest of $18,230, in the Vermont Employees' Retirement System. The debtor has no further assets.

On September 8, 1983, the debtor's bank delivered the checking account balance to the chapter 7 trustee in response to the trustee's turnover request of the previous day. On September 14, 1983, the debtor amended Schedule B–4 in order to claim as exempt property the proceeds of the checking account.

On September 16, 1983, the trustee filed an objection to the debtor's claim of exempt property, with respect to the proceeds of the checking account, and with respect to the debtor's participation interest in the Vermont Employees' Retirement System. On September 19, 1983, the debtor moved to amend Schedule B–4 so that he could claim the federal exemptions in lieu of those permitted under state law. The trustee has opposed the debtor's motion to amend.

On October 3, 1983, a hearing was held on the debtor's motion to amend; an order issued allowing the amendment on December 13, 1983. On November 8, 1983, a final hearing was held on the trustee's objections to the claims of exempt property.

## FACTS

The debtor is 46 years old and recently divorced; has as dependents two teenage sons; and earns $507 weekly from his employer of 26 years, the State of Vermont. The debtor lives at his mother's house, together with his two sons. The debtor's former spouse does not contribute to the support of the two boys. There is no equity in the debtor's former residence, being the house in which he owns a half-interest, and a foreclosure of the premises is pending in State Court.

The testimony adduced at the hearings and the records in the case establish that, had the debtor claimed as exempt property the checking account balance at the time of filing his statement of financial affairs, the entire balance would have been exempt property.

The debtor's $18,230 participation interest in his system retirement plan represents the proceeds of contributions made over the course of roughly 18 years to a Vermont Employees' Retirement System contributory plan of which the debtor was a member until July 1981. On July 29, 1981, the debtor made an irrevocable election to quit the contributory plan and join a noncontributory plan. At that time, the debtor "rolled over" the refundable proceeds of the old plan into the new plan. Under the new plan, no benefits are payable until the debtor's system employment ends. Under the plan the debtor had no present right of access to the rollover funds on the date of the filing of his petition for relief; his only right, then as now, is to receive benefits *in futuro* when his system employment ends.

## DISCUSSION

The court is presented with two matters for determination: (1) whether the debtor may claim as exempt property under Code section 522(d)(5), the proceeds of his checking account, which the trustee has caused to be transferred to the trustee's official account; and (2) whether the debtor's participation interest (the rollover funds) in the Vermont State Retirement System is exempt property under Code section 522(d)(10)(E).

A debtor does not need court permission to amend any of his schedules so long as the case is still open. *In re Gershenbaum*, 598 F.2d 779, 781 (3d Cir.1979). Bankruptcy Rule 1009 by its terms permits amendments "as a matter of course." Thus the debtor was entitled to amend Schedule B–4 to claim the federal exemptions. Accordingly, the motion to amend was granted by separate order on December 13, 1983.

However, the right to amend is not the same as the right to the exemption. *In re Burgess*, 1 B.R. 421, 424 (Bkrtcy.M.D. Tenn.1979). Upon objection by the trustee in bankruptcy, allowance of the amended exemption depends on other considerations, namely, whether there is a showing of bad faith by the debtor or prejudice to creditors. Absent a showing of bad faith or prejudice, and provided the case is still open, an allowable exemption should be allowed no matter when it is claimed. *In re Andermahr*, 30 B.R. 532, 533; 8 CBC 2d 1316; 10 BCD 917 (9th Cir.Bkrtcy.App. 1983); *see, Matter of Doan*, 672 F.2d 831, 833; 6 CBC 2d 306 (11th Cir.1982).

Neither the evidence nor the court's findings support a conclusion of prejudice to creditors for bad faith on the part of the debtor with respect to the claim of exempt property as to the checking account balance. Although active concealment of an asset would require denial of the exemption claim, *Matter of Doan*, 672 F.2d 831, 6 CBC 2d at 308, the instant account was listed as an asset and the findings support at most an oversight to include the account balance in the schedule of exempt property. As simple delay in filing an amendment does not prejudice creditors where the case is not closed, *id.*, and since the instant case was noticed to creditors as a "no asset" case, no creditor reasonably relied on a distribution in this case and there is no prejudice to any creditor if the debtor's claim of exempt property as to the bank account is allowed. The argument that

prejudice to creditors necessarily results where an amendment and allowance of exemption occurs after assets have come into the possession of the trustee, was specifically rejected in *In re Andermahr*, 30 B.R. 532, 8 CBC 2d at 1318 (funds held by a trustee for distribution to creditors were made subject to a debtor's claim, by amendment to schedule B–4, of exempt property).

In sum, a claim of exemption should not be denied merely because it was asserted two months after the case commenced unless there is a showing of bad faith by the debtor or prejudice to creditors. *See, In re Andermahr, supra, at id.* There being no evidence of bad faith or prejudice to creditors, the debtor's claim to exemption of the checking account balance should be allowed. Allowance of the exemption claim is consistent with "the universal rule that exemption statutes should receive a liberal construction in favor of those intended to be benefited." *In re McQueen*, 21 B.R. 736, 738 (Bkrtcy.D.Vt.1982); 31 Am.Jur.2d § 38 at 362.

■■■■ As to the debtor's retirement interest, state law will control whether the interest is an interest in property and thus subject to inclusion in the debtor's estate under Code section 541. Collier 4:541.-09[2]. Section 541 provides that "(a) The commencement of a case ... creates an estate. Such estate is compromised of ... (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case."

Vermont Statutes, title 3, section 476 (1973) provides:

A [Vermont Employees' Retirement System] member's annuity, pension, or retirement allowance under this subchapter and his funds in the retirement system, shall not be exempt from taxation, including income tax, but shall be exempt from the operation of any laws relating to bankruptcy or insolvency and shall not be attached or taken upon execution or other process of any court. No assignment by a member of any part of such funds to which he is or may be entitled, or of any interest in such funds, shall be valid ...

The effect of section 476 is to place the rollover funds beyond the reach of the estate of the debtor.

That the rollover funds did not constitute property of the debtor at the time of the filing of the petition is substantiated by the records in this case. The Deputy State Treasurer and Administrator of State Pension plans testified that the funds in the retirement plan are assets neither of the debtor nor of the State of Vermont, but of Aetna Life Insurance Company (Aetna) as provided in the plan: "Group Annuity Benefit Accumulation Contract LT–6875 between Aetna and the Board of Trustees of the Vermont State Retirement System ... section 11.3... Amounts included in the account are owned by Aetna, and Aetna is not a trustee with respect to such amounts." The debtor's initial rollover contribution to the plan has merged in all respects with the contributions of the state under the new non-contributory plan.

The principle that an interest in a retirement plan does not become part of the debtor's estate is sound where, as here, the plan member may not, short of truncating his employment, force present distribution of any sum. At the time of the filing of his petition for relief, the debtor held only an entitlement to future payments, not a right of present access to the funds. A right to future payments that are non-transferable, non-assignable and non-attachable, is of no value to the estate, for the reason that the entitlement may not be prematurely liquidated into a lump sum or other current distribution.

In a recent case holding that assets of a Keogh plan were assets of the estate under the Code, the persuasive concurring opinion stated: "The majority's holding will not affect employee pension and annuity plans created by employers, because the assets of such plans would not be included in the debtor's estate under section 541." *In re Clark*, 711 F.2d 21, 24; 8 CBC 2d 1133, 1136; 10 BCD 968, 970 (3d Cir.1983).

In the instant case the debtor's retirement interest was not a property interest of the debtor as of the commencement of the case. Accordingly, the interest is not part of the debtor's estate.

■ Assuming, *arguendo*, that the interest was part of the debtor's estate, it nevertheless is exempt in full under Code section 522(d)(10)(E). The section grants exempt status to a debtor's right to receive:

> a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
>
> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
>
> (ii) such payment is on account of age or length service; and
>
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. § 401(a), 403(b), 408, or 409).

The legislative history of section 522(d)(10)(E) speaks to "benefits akin to future earnings of the debtor." House Report No. 95–595, 95th Cong., 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318. The intent is to insure that such benefits are available for retirement purposes or in the event of disability or termination of employment.

Testimony at the hearing established that the instant Vermont State Retirement System plan was established for the exclusive purpose of providing benefits to plan members or their beneficiaries; that plan funds cannot be diverted to any other purpose, and that members can gain access to their retirement benefits only upon the occurrence of the earliest of the following events: disability, death, retirement, or termination of employment with the state. As such, future payments under the plan are akin to future earnings, exactly the type of future income interest that Code section 522(d)(10)(E) is designed to protect.

The trustee argues that the instant plan is not a pension or retirement plan but an investment vehicle since the debtor made an initial contribution to the plan at the time he became a plan member. The court observes that the debtor had no right of present access, at the time he filed his petition for relief to the funds he contributed upon entry to the plan. Further, the plan is a governmental plan as defined in United States Code, Title 26, Section 414(d). In short, the plan is not aptly characterized as an investment vehicle; it is correctly characterized as a "pension, profit-sharing, annuity *or similar plan or contract,*" Code § 522(d)(10)(E), and the debtor's right to payment under the plan falls squarely within the protection of section 522(d)(10)(E).

The trustee also argues that because the debtor could accelerate his receipt of benefits under the plan by terminating his employment with the state, the plan does not satisfy the test that payments be on account of illness, disability, death, age, or length of service. As to this argument, the court believes that the test is satisfied. Testimony at the hearing established that the debtor would receive benefits in the event of disability, death, or termination of employment. This court does not construe this test to mean that a retirement interest which meets the test criteria should be considered nonexempt on the basis that the interest could be realized if the debtor were to quit his job and thereby to give up his only source of income. The underlying purpose of chapter 7 of the Code is to give the honest debtor "a new opportunity in life and a clear field for future effort, unhampered by the pressure of preexisting debt." *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 113–114, 27 L.Ed.2d 124. This purpose is not served by excepting from exemption, unless the debtor abandon his employment, · an otherwise exemptable retirement interest. It hardly needs pointing out that it would be foolhardy and

self-defeating for the debtor, at age 46, and without income assets, to voluntarily terminate his employment with the state, thereby cutting himself off from the means with which to support himself and his dependents.

The trustee also argues that even if the debtor's retirement interest is otherwise exempt, it is excepted from exemption under Code section 522(d)(10)(E)(iii), as being an interest which, the trustee alleges, does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (IRC). Without canvassing these sections in detail, the court observes that a failure to qualify under Code section 522(d)(10)(E)(iii) is not fatal to a claim of exemption, for the reason that the subsection must be read together with subsections 522(d)(10)(E)(i), and (ii) in the conjunctive and not in the disjunctive. In order for an interest in a retirement plan to be excepted from exemption, the plan must meet the criteria of all three subsections. *In re Miller*, 33 B.R. 549, 11 BCD 85, 87 (Bkrtcy. D.Minn.1983). As the State of Vermont is not an insider as the term is used in the Code, *see*, Code § 101(25), the test under subsection 522(d)(10)(E)(i) is not met and the debtor's interest is not excepted from exemption. There is no need to analyze the impact of subsection (iii) on the debtor's interest. However, the court points out that the instant plan appears to qualify under IRC section 401(a), and the debtor's interest appears to be taxable with such tax chargable to the debtor, under IRC section 403(a). The court notes that the debtor's interest in the plan, including the rollover funds, is subject to state taxation, including income tax. 3 Vt.Stat. § 476 (1973).

■ In determining that the debtor's participation interest is exempt, under Code section 522(d)(10)(E), in whole rather than in part, the court has determined that it must take into account the circumstances of the debtor at the time distribution under the instant plan are to be received. The statute exempts further payments "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." The trustee argues that the determination must be made as of the date of the filing of the petition for relief. Since, at the time of the filing, the debtor was employed and had an income sufficient to supply himself and his dependents with the basic necessities of life, the trustee argues that the debtor's retirement plan participation interest is not "necessary for the support of the debtor and any dependent of the debtor." However,

the bankruptcy exemptions provided in § 522(d) are derived in large part from the Uniform Exemption Act, promulgated by the Commissioners of Uniform of State Laws in August 1976. H.R.Rep. 95–595, 95th Congress, 1st Sess. 361 (1977). Section 6(b) of the Uniform Exemption Act defined the phrase "property to the extent reasonably necessary for the support of (the debtor) and his dependents" to mean property required to meet the present and anticipated needs of the individual and his dependents, as determined by the court after consideration of the individual's responsibilities and all the present and anticipated property and income of the individual, including that which is exempt.

Uniform Exemption Act § 6(b), 13 U.L.A. 365, 382 (1979).

*In re Miller*, 33 B.R. 549, 11 BCD at 87. Thus, in considering the instant exemption claim, the court must look to the support requirements of the debtor both now and *in futuro* when the debtor's employment ends.

In concluding that the debtor's participation interest is exempt in whole rather than in part, the court has determined that the debtor's present salary ($507 per week) and the debtor's modest retirement interest are both reasonably necessary for the long-term support of the debtor and his dependents, together with any additional retirement benefits which may accrue as the debtor, now 46 years old, continues work, and together with any social security benefits to which the debtor may become entitled.

The court is also convinced that Congress did not intend to deny a debtor such as this one the right to exempt his retirement interest. Nonexemption is the rule as to benefits not necessary for support; subsection 522(d)(10)(E)(i), (ii) and (iii) evidence particular concern that the nonexemption rule apply to large vested benefits which are unrelated to support needs. Such are not the facts here.

The trustee has not demonstrated that the debtor's retirement interest is not reasonably necessary to the support of the debtor and his dependents. As the trustee has not met his burden under Bankruptcy Rule 4003(c) of establishing that the exemption as to the debtor's retirement interest was not properly claimed, the debtor's claim of exemption as to his interest in the Vermont Employees' Retirement System plan, including the rollover funds therein, is sustained.

The debtor's position is buttressed by the universal rule that exemption statutes should receive a liberal construction in favor of those intended to be benefited and favorable to the objectives and purposes of their enactment. *In re McQueen* (Bkrtcy. D.Vt.1982) 21 B.R. 736; 31 Am.Jur.2d § 38 at 362.

### ORDER

Upon the foregoing,

IT IS ORDERED, that:

(1) the trustee's objection to the exemption claim as to the proceeds of the checking account is OVERRULED and the trustee is directed to turn over such proceeds, in the amount of $1,605.72, to the debtor; and

(2) the trustee's objection to the exemption claim as to the debtor's retirement interest, including the rollover funds, is OVERRULED.